172 P.3d 458

**STATE of Hawai'i, Respondent/Plaintiff–Appellee**

v.

**Marie BELTRAN, Petitioner/Defendant–Appellant.**

No. 26096.

Supreme Court of Hawai'i.

Nov. 16, 2007.

at 118, 121, 122, 157 P.3d at 557, 560, 561. The ICA ordered that if the charge against Petitioner did not allege a negligent state of mind element, the court shall enter judgment for camping without a permit as a civil violation under HRS § 702–213(1). *Id.* at 118, 157 P.3d at 557. If, however, the charge included a negligent or higher state of mind, the court shall enter judgment as a criminal petty misdemeanor offense of camping without a permit under HRS § 702–213(2). *Id.* at 122, 157 P.3d at 561.[3] We hold that the camping regulation involved is overbroad and vague and with all due respect, reverse the ICA's May 3, 2007 judgment and the November 10, 2003 judgment of the court.

Theresa S. Marshall, Deputy Public Defender (Deborah L. Kim, Deputy Public Defender on the application and briefs), for petitioner/defendant-appellant.

Ryan Yeh, Deputy Prosecuting Attorney, City and County of Honolulu, for respondent/plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

Petitioner/Defendant–Appellant Marie Beltran (Petitioner) filed an application for writ of certiorari on July 31, 2007, requesting that this court review the judgment of the Intermediate Court of Appeals (the ICA) filed on May 3, 2007, pursuant to its April 5, 2007 published opinion[1] vacating the November 10, 2003 judgment of the district court of the first circuit[2] (the court) convicting Petitioner of Camping Without a Permit, and remanding the case to the court to determine the classification of the offense with which Petitioner was charged. *State v. Keawemauhili,* 114 Hawai'i 100, 122, 157 P.3d 539, 561 (App. 2007). According to the ICA, the camping regulation involved was not constitutionally overbroad or vague and the offense is one of absolute or strict liability under Hawai'i Revised Statutes (HRS) § 702–213 (1993). *Id.*

### I.

The following matters adduced, some verbatim, are from the record and the submissions of the parties.

On May 29, 2003, *[Petitioner] appeared before the [court], along with John Keawemauhili (Keawemauhili) and Wendall Lucas (Lucas) to answer to citations for the offense of Camping [W]ithout a Permit, in violation of Revised Ordinance of Honolulu (ROH) 10–1–3(a)(2). The parties collectively moved to dismiss the charges, challenging the camping ordinance as unconstitutionally vague and overbroad, and for improperly imposing criminal sanctions based on strict liability. . . .*

At the hearing on the motion to dismiss, *the parties submitted the matter on the record.* [Petitioner] and Lucas orally joined in Keawemauhili's motion to dismiss which challenged the camping ordinance based on "Defendant's Motion to Dismiss # 2" and "Defendant's Amended Motion to Dismiss." The declaration and the memorandum in support of Defendant's Motion to Dismiss # 2 alleged that *Keawemauhili was cited by Honolulu police officers at 10:00 p.m. on October 2, 2002 for camping without a permit at Mokuleia beach park in violation of "Hawai'i Revised Ordi-*

---

**1.** The opinion was authored by Associate Judge Corinne K.A. Watanabe and joined by Chief Judge James S. Burns and Associate Judge Craig H. Nakamura.

**2.** The Honorable Clarence Pacarro presided.

**3.** Respondent/Plaintiff–Appellee State of Hawai'i (Respondent) did not file a memorandum in opposition.

*nances 10–1.3A(2)* [sic]." In [Respondent's] Memorandum in Opposition to Defendant's Motion to Dismiss, the prosecutor stated: *"Defendant was sleeping in a van next to a pitched tent."*

... The prosecutor argued HRS § 702–204 applied to the ordinance designating a state of mind of intentional, knowing or recklessness....

(Some emphases in original and some added.)

Following argument on the motions to dismiss, the court denied the motions.

THE COURT: All right, the court agrees with [Respondent] that notwithstanding that the [ROH] does not specifically reference the particular MR requirement that the *court can look towards 702–204 with respect to the mental state as to whether or not the defendants acted intentionally, knowing[ly] or recklessly; therefore the court will deny the motions and find the [ROH] is not unconstitutional or that it's defective or flawed on it's face.* So the court will deny the motions.

MR. KIM: Your Honor, I'm sorry to keep on dragging this but the fact that there's two parts to the motion[s], *the second part was that it was too overly broad, it wasn't just the mens rea requirement.*

...

THE COURT: *The [c]ourt will also deny the motion[s] based on those grounds, too.*

The ICA related that procedurally, after denial of the motions to dismiss,

[t]he [court] then set all three cases for trial on the same date. *Appellants thereafter entered conditional no-contest pleas that allowed them to appeal the denial of their motions to dismiss.* The [court] accepted the pleas and entered separate judgments convicting Appellants as charged and sentencing each of them to pay a $20 fine, payment of which was suspended pending appeal. Appellants filed separate appeals, which [the ICA] consolidated pursuant to an order entered on December 2, 2005.

*Id.* at 105, 157 P.3d at 544 (emphasis added) (footnote omitted).

The Petition refers to ROH § 10–1.3 regarding camping permits and *Amended Camping Policy, Rules and Regulations Governing Camping at City Parks* § 3(5), City and County of Honolulu, Department of Parks and Recreation (1996) [hereinafter Rule or the Rule]. The relevant ROH states:

Sec. 10–1.3  Permits.

(a) Required. *Any person using the recreational and other areas and facilities* under the control, maintenance, management and operation of the department of parks and recreation *shall first obtain a permit from the department for the following uses:*

. . . .

(2) *Camping;*

. . . .

(b) Director To Promulgate Rules and Regulations. *The director shall promulgate rules* and regulations pursuant to HRS chapter 91, *to govern the use of said areas and facilities....*

. . . .

(c) Conditions of Permit. *Permits shall be issued pursuant to the provisions contained in this article and to the rules* and regulations promulgated by the director....

(Emphases added.)  Also, ROH § 10–1.6 § 5 Penalties Violations—Penalty (d)(1), indicates that camping without a permit is a criminal offense and provides that any person violating any provision of these rules shall be punished by a fine not exceeding $500 or by imprisonment for not more than 30 days, or by both such fine and imprisonment.

As the ICA correctly notes, the camping ordinance does not contain a definition for "camping" or any state of mind with respect to the offense. A definition of "camping," however, is contained in the Rule:

*"Camping" means the use of public park for living accommodation purposes such as* sleeping activities, or making preparations to sleep (including the laying down of bedding for the purpose of sleeping), or storing personal belongings, or making any fire, or using any tents or shelter or other structure or vehicle for sleeping or

doing any digging or earth breaking or carrying on cooking activities. *The above-listed activities constitute camping when it reasonably appears, in light of the circumstances, that the participants, in conducting these activities, are in fact using the area as a living accommodation regardless of the intent of the participants or the nature of any other activities in which they may also be engaging.*

(Emphases added.)

## II.

The questions presented by Petitioner are "[w]hether the ICA gravely erred in concluding [ (1) ] that the camping ordinance and rule were not unconstitutionally overbroad and vague, and [ (2) ] that HRS § 702–213(1) was applicable to a camping charge."

Viewing Petitioner's petition logically, Petitioner's first objection is that "[t]he ICA gravely erred in concluding '[t]he record on appeal is absent of any facts surrounding the circumstances for [Petitioner's] arrest[,]' thus concluding they [sic] were unable to determine if the ordinance and the rule violated [Petitioner's] and the co-defendants' constitutional rights." (Quoting *Keawemauhili*, 114 Hawai'i at 122, 157 P.3d at 561.) Petitioner argues that

[ (1) ] The record shows that the parties agreed to submit the motion to dismiss on the [record,] which included the allegation in the declaration and the memorandum in support of Defendant's Motion to Dismiss # 2 *that Keawemauhili was cited by Honolulu police officers at 10:00 p.m. on October 2, 2002 for camping without a permit at Mokuleia beach park in violation of "Hawai'i Revised Ordiannces 10–1.3A(2)* [sic]," and [Respondent's] Memorandum in Opposition to Defendant's Motion to Dismiss, wherein the prosecutor alleged: *"Defendant was sleeping in a van next to a pitched tent"*; [ (2) ] "[Respondent] did not argue at any point below that the record was inadequate as the parties had agreed upon the state of the record before submitting the motion ..."; [ (3) ] "this [c]ourt may entertain a facial overbreadth challenge to the extent that enforcement of the camping ordinance infringes on the consti-

tutional rights of others who may desire to engage in such activities but refrain from doing so rather than risk prosecution. *See Kolender v. Lawson*, 461 U.S. 352, 358 n. 8[, 103 S.Ct. 1855, 75 L.Ed.2d 903] (1983) (held, facial overbreadth and vagueness challenges permitted when the disputed law reaches a 'substantial amount of constitutionally protected conduct' ").

(Emphases in original.) Although Petitioner joined in Keawemauhili's motion to dismiss, the facts giving rise to the violation relate to Keawemauhili. Petitioner does not indicate such facts were identical to the ones leading to her arrest. Accordingly, on the face of the record, the ICA did not gravely err in deciding that the record is devoid of the facts surrounding Petitioner's arrest. However, Petitioner did enter a conditional plea of no contest to violation of the ordinance, thereby incurring a conviction to that extent for purposes of appellate review.

## III.

As to the second argument, Petitioner argues "the overbroad definition of 'camping' infringes on the exercise of the freedoms of movement and association ... guaranteed by the due process clauses of the federal and Hawai'i constitutions and the right to privacy and freedom of movement under [a]rticle 1, section 2 of the Hawai'i constitution." According to Petitioner, "freedom of movement and freedom of association ... are necessary foundations to our American way of life since their absence or denial characterizes confinement and imprisonment[,]" (quoting *State v. Shigematsu*, 52 Haw. 604, 609–10, 483 P.2d 997, 1000 (1971)), under the Hawai'i Constitution, "[f]reedom would be incomplete if it does not include the right of men to move from place to place, ... *to stand under open sky in a public park and enjoy the fresh air, to lie down on a public beach and enjoy a sunbath, ... and the right to associate with others* in enjoyment of an avocation or a vocation[,]" (quoting *id.* at 610, 483 P.2d at 1001 (emphasis added)), and "freedom of movement is 'a vital aspect of the right of privacy' under [a]rticle 1, [s]ection 2 of the Hawai'i Constitution[,]" (quoting *State v. Abellano*, 50 Haw. 384, 386–87, 441 P.2d 333,

335 (1968) (Levinson, J., concurring, joined by Richardson, C.J.)). Petitioner thus argues the Rule is overbroad in that it would infringe on activities that "amount to spending a day at the beach":

> [T]he rule unreasonably limits activities that may merely amount to spending a day at the beach. People should be able to bring tents, items for sleeping, cooking, and engage in activities which certainly may appear to amount to setting up "living accommodations" under the camping definition.... Requiring a permit based on conduct which "reasonably appears" that one is "using the park as a living accommodation," without regard to the individual's actual intent, allows prosecution of beach goers or park users based on the appearance that their elaborate picnicking activities—cooking or sleeping under an awning—are "setting up camp[ ]" ... [and] is an unreasonable restraint on their constitutional rights. [In effect Petitioner argues t]he overbroad definition of "camping" unnecessarily infringes on the freedoms of association, movement and privacy[.]"

(Emphases added.)

Petitioner maintains that "the ICA avoided the need to address the extent to which such activities are constitutionally protected by concluding[,] in [a] completely circular fashion[,] that the ordinance does not prohibit such activities but 'merely require[s] that a permit be obtained to engage in these activities.'" (Quoting *Keawemauhili*, 114 Hawai'i at 120, 157 P.3d at 559.) According to Petitioner "[t]he ICA failed to recognize that while requiring permits to regulate the use of public parks is a legitimate exercise of the government's police power, the sweeping definition of conduct that requires a permit, *i.e.*, camping, goes further than necessary to achieve the government's purpose and unreasonably limits constitutionally-protected as well as unprotected conduct."

The ICA did observe further that, as to her overbreadth challenge, Petitioner must show how she was affected and, to reiterate, the ICA stated that "[t]he record on appeal is absent of any facts surrounding the circumstances for Appellants' arrests."

*Keawemauhili*, 114 Hawai'i at 122, 157 P.3d at 561.

> [I]t is well-settled that "[o]ne who alleges that a statute is unconstitutionally overbroad, other than a statute affecting the freedom of expression, must be directly affected by the claimed overbroad aspects." [*State v. Gaylord*, 78 Hawai'i 127, 142, 890 P.2d 1167, 1182 (1995)] (quoting *State v. Tripp*, 71 Haw. 479, 483, 795 P.2d 280, 282 (1990) (quotation marks omitted)). "A person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may conceivably be applied unconstitutionally to others." *State v. Sturch*, 82 Hawai'i 269, 274, 921 P.2d 1170, 1175 (App.1996) (quoting *[State v.] Kaneakua*, 61 Haw. [136,] 144, 597 P.2d [590,] 594 [ (1979) ] (quotation marks omitted))[.]

*Id.* at 121–22, 157 P.3d at 560–61. In *Sturch*, the ICA said that

> laws are overbroad because they would punish innocent, constitutionally protected behavior as well as conduct which may be validly regulated.... [Otherwise] the overbreadth doctrine is generally limited to a law's effect on the First Amendment rights of those not present before the court. *Village of Hoffman Estates v. Flipside, Hoffman Estates, [Inc.]*, 455 U.S. 489, 508[, 102 S.Ct. 1186, 71 L.Ed.2d 362] (1982) (White, J., concurring).

82 Hawai'i at 273–74, 921 P.2d at 1174–75 (other citations omitted). Generally, then, "'one who alleges that a statute is unconstitutionally overbroad, other than a statute affecting the freedom of expression, must be directly affected by the claimed overbroad aspects.'" *Id.* at 274, 921 P.2d at 1175 (quoting *Tripp*, 71 Haw. at 483, 795 P.2d at 282 (citing *Kaneakua*, 61 Haw. at 143–44, 597 P.2d at 594)) (brackets omitted). Because there are no facts in the record as to the circumstances resulting in Petitioner's arrest, it cannot be determined how Petitioner was "directly affected" by the ordinance. Further, as in *Sturch*, Petitioner here "did not claim that the statute infringed upon [her]

constitutional right to freedom of expression," *id.*, or privacy.[4]

As mentioned before, Petitioner did enter a no-contest plea to violation of the ordinance. By her joinder in the motion to dismiss, Petitioner concedes that, as was Sturch, she "is a person to whom [the ordinance] directly applies[.]" *Id.* Because her "expressive conduct is not at issue," *id.*, generally Petitioner would "not have standing to challenge [the ordinance] as overbroad[,]" *id.*

### IV.

However, as related *supra*, Petitioner maintains that "this court may entertain a facial overbreadth challenge to the extent ... the ordinance infringes on the constitutional rights of others[.]" (Citing *Kolender*, 461 U.S. at 358 n. 8, 103 S.Ct. 1855.) In *Kolender*, the Court was faced primarily with "a facial [vagueness] challenge to a criminal statute that requires persons who loiter or wander on the streets to provide a 'credible and reliable' identification and to account for their presence when requested by a peace officer[.]" 461 U.S. at 353, 103 S.Ct. 1855. The Court indicated that "[u]nder the terms of the statute, failure of the individual to provide 'credible and reliable' identification permits the arrest." *Id.* at 357, 103 S.Ct. 1855 (footnote omitted).

■ As stated by the Court, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* (citing

*Hoffman Estates, supra* ) (other citations omitted). According to the Court, the statute "contain[ed] no standard for determining what a suspect has to do in order to satisfy the requirement to provide a 'credible and reliable' identification. As such, the statute vests virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute[.]" *Id.* at 358, 103 S.Ct. 1855.

Although its "concern ... [was] based upon the 'potential for arbitrarily suppressing First Amendment liberties[,]' " *id.* (quoting *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 91, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965)), the Court declared that the statute "[i]n addition, ... implicates consideration of the constitutional *right to freedom of movement* [,]" *id.* (citations and footnote omitted) (emphasis added), and, thus, involved an overbreadth violation. In footnote 8 to the foregoing statement the Court said, "First, ... we permit a facial challenge if a law reaches 'a substantial amount of constitutionally protected conduct.' [*Hoffman Estates* ], 455 U.S. [at] 494[, 102 S.Ct. 1186, 71 L.Ed.2d 362].... Second, where a statute imposes criminal penalties, the standard of certainty is higher." *Id.* at 358 n. 8, 103 S.Ct. 1855 (citation omitted). Thus, the Court concluded, "[t]his concern has, at times, *led us to invalidate a criminal statute on its face even when it could conceivably have had some valid application.*" *Id.* (emphasis added) (citations omitted). Ultimately, the Court held "that the statute ... is unconstitutionally vague within the meaning of the Due Process clause of the Fourteenth Amendment by failing to clarify what is contemplated by the

---

4. As stated in *Frietas v. Admin. Dir. of Courts*, 104 Hawai'i 483, 486 n. 6, 92 P.3d 993, 996 n. 6 (2004):

> For example, this court has held that with regard to the right to privacy and first amendment rights, a person whose rights are not violated may raise them for others. *State v. Kam*, 69 Haw. 483, 488, 748 P.2d 372, 375 (1988) (holding that "sellers of pornographic items possess the standing to assert the privacy rights of those persons who wish to buy those items to read or view in the privacy of the home" because buyers of pornography will usually never be subject to prosecution under the statute at issue); *State v. Manzo*, 58 Haw. 440, 445, 573 P.2d 945, 949 (1977) (explaining

that overbreath [sic] doctrine as applied to the first amendment is an exception to "traditional rule that a person may not challenge a statute upon the ground that it might be applied unconstitutionally in circumstances other than those before the court")[.]

(Brackets and other citations omitted.) It may be noted that although freedom of movement was identified as a separate freedom in *Shigematsu*, 52 Haw. at 609–10, 483 P.2d at 1000, it was identified as an aspect of the right to privacy in the concurring opinion in *Abellano*, 50 Haw. at 386–87, 441 P.2d at 335, to which Petitioner cites. At its center, however, Petitioner's arguments rest on freedom of movement and association.

requirement that a suspect provide a 'credible and reliable' identification" *Id.* at 353–54, 103 S.Ct. 1855.

## V.

■ *Hoffman Estates,* referred to in *Kolender,* involved a "facial challenge to a drug paraphernalia ordinance on the ground that it is unconstitutionally vague and overbroad." *Hoffman Estates,* 455 U.S. at 491, 102 S.Ct. 1186. That case stated that "[i]n a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Id.* at 494, 102 S.Ct. 1186 (footnote omitted). In determining whether a substantial amount of protected activity was affected, "a court should evaluate the ambiguous as well as the unambiguous scope of the enactment. To this extent, the vagueness of a law affects overbreadth analysis." *Id.* at 495 n. 6, 102 S.Ct. 1186.

■ On its face the Rule in the instant case states that certain conduct, according to the definition of camping, constitutes camping "*regardless* of the intent of the participants or the nature of any other activities in which they may also be engaging." (Emphasis added.) However, such "other activities" conceivably may be activities as innocent as those described in *Shigematsu* relating to freedom of movement and association, or that involve expressive conduct subjecting the camping regulation to greater scrutiny. In sweeping activity into its ambit "regardless" of its nature, the Rule by definition includes any activity not specifically regulated by the camping ordinance.

Such other activity, even if predominant in nature, is not separable from, but ensnared by, the camping regulation. The limitless net cast by the Rule would seemingly reach "a substantial amount of constitutionally protected conduct[,]" *Hoffman Estates,* 455 U.S. at 494, 102 S.Ct. 1186, under the Hawai'i Constitution, as described in *Shigematsu.* Under these circumstances the camping regulation would appear void because it would subject "innocent, constitutionally protected behavior as well as conduct which may be validly regulated[,]" *Sturch,* 82 Hawai'i at 273–74, 921 P.2d at 1174–75, to a criminal penalty.

## VI.

If the camping regulation is overbroad, the vagueness question need not be reached. However, for completeness, as to the third argument, it is noted that Petitioner agrees with the ICA's statement that

a criminal statute is void for vagueness unless it: 1) gives the person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited so that he or she may act accordingly, and 2) provides explicit standards for those who apply the statute, in order to avoid arbitrary and discriminatory enforcement and the delegation of basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis.

*Keawemauhili,* 114 Hawai'i at 119, 157 P.3d at 558 (citing *State v. Bates,* 84 Hawai'i 211, 220–21, 933 P.2d 48, 57–58 (1997)).

Petitioner argues (1) although the ICA stated the "Camping Ordinance, in conjunction with the Camping Rules, is not unconstitutionally vague[,]" *id.* at 121, 157 P.3d at 560, "the number of areas which the director regulates is so varied and numerous, that there is no way for an individual to know how, whether or where to find a definition of camping"; (2) "the rule itself is unconstitutionally vague" because (a) "sleeping," "sleep," "sleeping activities" or "making preparations to sleep" "are ... amorphous and dependent on subjective interpretation"; (b) "the definitions of 'storing personal belongings,' 'doing any digging or earth breaking,' and 'carrying on cooking activities' suffer from the same lack of specificity"; (c) "conduct from which it 'reasonably appears' that one is 'using the park as a living accommodation,' without regard to the individual's actual intent, ... based on a third-party's perception ... does not provide fair notice ... to avoid arrest"; and (d) "[t]he rule defines the prohibited uses ... for 'living accommodation' as those activities which 'reasonably appear' to be those where the park is being used as a 'living accommodation[ ]' ... [is a] circular definition[.]"

In its answering brief Respondent maintained that

> [the Rule] ... states camping "means the use of public park for living accommodation purposes." [The Rule] then lists the specific activities that could constitute camping, but would only be considered camping *if* it reasonably appeared the participants were in fact using the park area for "living accommodation purposes." (Emphasis added.) Such language is ... adequate notice of what constitutes [camping] ... ROH § 10–1.3(a)(2) and Section 3(5) state with reasonable clarity the act proscribed and provides [sic] fixed standards for adjudging guilt.

(Citation omitted.)

### VII.

With respect to Petitioner's argument (1), it appears that ROH § 10–1.3(a) that concerns permits in general and includes "camping" permits, in particular ROH § 10–1.3(a)(2), also vests authority in the Director to promulgate rules, ROH § 10–1.3(b), and further mandates in relevant part that "permits shall be issued pursuant to ... rules ... promulgated by the director[,]" ROH § 10–1.3(c). As mentioned before, the Rule contains a definition of camping.

The provision in ROH § 10–1.3(c), on its face, notifies potential campers that a camping permit is issued "pursuant to ... rules," and thus, that a permit is subject to the rules promulgated by the director. In that situation, the reader is "connect[ed]" from the ordinance to the rule as Petitioner argues should be the case.[5]

### VIII.

As to the definition of "camping," referred to in Petitioner's items (2)(a), (b), and (d),

read in context, the phrase "for living accommodation purposes" is exemplified in conduct "such as" "sleeping," "preparations to sleep," "storing personal belongings," or the use of "tents or shelter ... for sleeping" and "cooking activities." "Such as" refers to an "adjectival clause[,]" *Webster's Third New Int'l Dictionary* 125 (1961), "of a kind or character about to be indicated, suggested, or exemplified[,]" *id.* at 2283. Inasmuch as the examples of the prohibited conduct are intended to "indicate[ ], suggest[ ], or exemplify[ ]" what is meant by living accommodation, accommodation in the Rule connotes lodging. The definition of "accommodation" includes "lodging, food, and services (as at a hotel)[.]" *Webster's Third New Int'l Dictionary* at 12. Use of the public park as a living accommodation, then, is reasonably distinguishable from recreational conduct such as "spending a day at the beach."

■ However, the foregoing is modified by a "reasonably appears" standard in the definition of camping. To repeat, that standard instructs that a violation occurs where "it *reasonably appears, in light of the circumstances,* that the participants in conducting these activities, are *in fact* using the area as a living accommodation regardless of the *intent* of the participants or the *nature of any activities* in which they may also be engaging." (Emphases added.)

Arguably, the standard would seem internally inconsistent and incomprehensible to "a person of ordinary intelligence," *State v. Bui,* 104 Hawai'i 462, 464, 92 P.3d 471, 473 (2004), and invites "delegation of basic policy matters to policemen ... for resolution on an *ad hoc* and subjective basis," *Bates,* 84 Hawai'i at 221, 933 P.2d at 58, in violation of the due process clause of the Hawai'i Constitution, article I, section 5.[6]

---

**5.** Although Petitioner's position at oral argument vacillated between agreeing that the camping definition in the rule was "incorporated" in the camping ordinance and not agreeing that it was, the latter position was apparently with respect to its argument (1) that there was no way an individual could know where to find the rule. Insofar as Petitioner argues that the ordinance, in conjunction with the rule, was overbroad and ambiguous, it concedes the rule was incorporated into the ordinance.

**6.** Article I, section 5 of the Hawai'i Constitution states as follows:

> No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

First, the standard requires the actor to view his or her conduct as a third person would, rather than informing the actor as to how to avoid violating the regulation. Additionally, the term "reasonably appears" is susceptible of subjective application among persons enforcing the regulation and those who must abide by it. The prepositional phrase "in light of the circumstances," does not instruct the actor on what is permissible or impermissible, but is broadly all encompassing, and again invites ad hoc and subjective resolution of the regulation policy by the police officer.

Relatedly, the phrase "in fact," meaning in common parlance "actual" or "real," *Black's Law Dictionary* 792 (8th ed.2004), modifying "us[e] of the area as a living accommodation," is seemingly contradictory of the earlier directive that a person's conduct of activities "reasonably appear[ ]" to be of such use; connoting that the appearance, *i.e.,* to "look[,] to seem[,]" *Webster's Third New Int'l Dictionary* at 103, of such utilization as a "living accommodation" need not be in actuality such use, so long as it reasonably, *i.e.,* "to a fairly sufficient extent[,]" *id.* at 1892, seems to be of such usage.

"In fact" seems also inconsistent with the qualification that "use" is to be evaluated "regardless of intent." It would appear logical that the intent of the parties would be a factor in determining whether "in fact," the participants were utilizing the area as a "living accommodation" or not. The phrase excluding consideration of "the nature of any other activities in which they may also be engaging" is at the least confusing in view of the prior directive that the prohibited activities are to be viewed "in the light of the circumstances," which would include an evaluation of the activities in which the participants were engaged. In effect, the standard vests virtually complete discretion in the hands of the police to determine whether a person has violated the regulation. *See Kolender,* 461 U.S. at 358, 103 S.Ct. 1855.

## IX.

The ICA found the ordinance was not vague, relying on *Clark v. Cmty. for Creative Non–Violence,* 468 U.S. 288, 104 S.Ct. 3065,

82 L.Ed.2d 221 (1984), and *People v. Scott,* 26 Cal.Rptr.2d 179 (Cal.App.Dep't Super.Ct.1993). According to the ICA, "[t]he [Honolulu] definition is almost identical to one contained in a National Park Service regulation that was upheld [in *Clark* ]" and in *Scott* where "a California appellate court upheld ... a municipal ordinance that was similar to the one upheld in *Clark*[.]" 114 Hawai'i at 119–20, 157 P.3d at 558–59. The ICA concluded that "most individuals have a common-sense understanding of what 'camping' is.... [T]he definition of 'camping' in [the Rule] provides sufficiently definite guidelines and examples ... [and] objective standards to law enforcement officials ... so as to prevent arbitrary enforcement[.]" *Id.* at 121, 157 P.3d at 560.

Similarly Respondent, in its answering brief, maintained that "[s]imilar camping ordinances have withstood unconstitutional challenges due to vagueness in other jurisdictions. In *Scott,* a camping ordinance, that had the same definition of camping as Section 3(5) was upheld, despite a constitutional challenge based on vagueness." (Citing 26 Cal.Rptr.2d. at 182–83.) (Other citations omitted.) However, Respondent mischaracterizes the *Scott* ordinance as being the "same." In fact in *Scott,* the term living accommodation was expressly defined as "remaining for prolonged or repetitious periods of time not associated with ordinary recreational use[.]" *Id.* at 180 n. 1. *Scott* described the ordinance as follows:

West Hollywood Municipal Code section 4801 ... Subdivision 8(a) ... states: "No person shall within the limits of any public park or recreation area: ... (a) Camp at any time." The ordinance also provides the following definition of camping:

" 'Camping' shall mean *residing in or using a park for living accommodation purposes, as exemplified by remaining for prolonged or repetitious periods of time not associated with ordinary recreational use of a park* with one's personal possessions (including but not limited to clothing, sleeping bags, bedrolls, blankets, sheets, luggage, backpacks, kitchen utensils, cookware, and similar material), sleeping or making preparations to

sleep, storing personal belongings as above defined, regularly cooking or consuming meals, or living in a parked vehicle. These activities constitute camping when it reasonably appears, in light of all the circumstances, that a person(s) is using a park as a living accommodation regardless of their intent or the nature of any other activities in which they might also be engaging."

*Id.* (emphasis added). The California court said that "[a]t arraignment in each case, the defendants made oral motions to dismiss the case ... [and] also requested the court rule on the constitutionality of the ordinance, specifically whether it was vague as to the definition of camping." *Id.* at 180. The court noted that the ordinance was similar to a National Park Service regulation:

> The ... ordinance at issue in this case is very similar to, and possibly modeled after, a National Park Service regulation prohibiting unauthorized camping (with a specific ban on sleeping) examined by the United States Supreme Court in [*Clark* ]. In that case, the Supreme Court upheld the regulation's ban on camping when it was challenged by demonstrators who wished to camp in a park across from the White House.

*Id.* at 181–82 (footnote omitted).

But as noted, the California ordinance, unlike the Honolulu ordinance, specifically defined "living accommodation." Significantly, in determining that "[t]he ordinance also provides adequate guidelines for the police sufficient to prevent arbitrary enforcement of the ordinance[,]" *Scott* relied, *inter alia,* on the more definitive limiting language that is not included in Rule 3(5):

> *The ordinance requires that the person's prohibited conduct be exemplified by their "remaining for prolonged or repetitious periods of time not associated with ordinary recreational* use of a park with one's personal possessions" which include indicia of camping[.]

*Id.* at 182 (emphasis added).

Finally, *Scott* held in contradiction to *Kolender,* that the defendants had to show the statute was vague in *all of its applications:*

So long as a statute does not threaten to infringe on the exercise of First Amendment or other constitutional rights, however, such ambiguities, even if numerous, do not justify the invalidation of a statute on its face. In order to succeed on a facial vagueness challenge to a legislative measure that does not threaten constitutionally protected conduct ... *a party must do more than identify some instances in which the application of the statute may be uncertain or ambiguous; he must demonstrate that the law is impermissibly vague in all of its applications.*

*Scott,* 26 Cal. Rptr.2d at 183 (emphasis added) (internal quotation marks, citations, and emphasis omitted) (ellipses in original). As mentioned before, *Kolender,* however, indicated that "[t]his concern has, at times, *led us to invalidate a criminal statute on its face even when it could conceivably have had some valid application.*" 461 U.S. at 358 n. 8, 103 S.Ct. 1855 (emphasis added) (citations omitted). In light of the foregoing and the specific analysis regarding Rule 3(5) *supra, Scott* cannot be considered persuasive.

In *Clark,* the camping prohibition was similar to the instant case but did not include the limiting language "remaining for prolonged or repetitious periods ... not associated with ordinary recreational use" in *Scott:*

Camping is defined as

> "the use of park land for living accommodation purposes such as sleeping activities, or making preparations to sleep (including the laying down of bedding for the purpose of sleeping), or storing personal belongings, or making any fire, or using any tents or ... other structure ... for sleeping or doing any digging or earth breaking or carrying on cooking activities."

These activities, the regulation provides, "constitute camping when it reasonably appears, in light of all the circumstances, that the participants, in conducting these activities, are in fact using the area as a living accommodation regardless of the intent of the participants or the nature of any other activities in which they may also be engaging."

*Clark,* 468 U.S. at 290–91, 104 S.Ct. 3065 (ellipses in original) (citations omitted). However, in *Clark,* the majority of the Court did not discuss the question of vagueness but focused on whether the camping regulation was a reasonable time, place and manner restriction on expressive activities:

> The issue in this case is whether a National Park Service regulation prohibiting camping in certain parks violates the First Amendment when applied to prohibit demonstrators from sleeping in Lafayette Park and the Mall in connection with a demonstration intended to call attention to the plight of the homeless. We hold that it does not[.]

*Id.* at 289, 104 S.Ct. 3065. As the majority noted, "Petitioners submit, as they did in the Court of Appeals, that the regulation forbidding sleeping is defensible either as a time, place, or manner restriction or as a regulation of symbolic conduct. We agree[.]" *Id.* at 294, 104 S.Ct. 3065. Similarly, the dissent focused on the reasonableness of the restriction as to time, place, and manner, stating, "First, the majority is either unwilling or unable to take seriously the First Amendment claims. . . . Second, the majority misapplies the test for ascertaining whether a restraint on speech qualifies as a reasonable time, place, and manner regulation." *Id.* at 301, 104 S.Ct. 3065 (Marshall, J., dissenting, joined by Brennan, J.).

Only the concurrence briefly referenced the vagueness question as being

> difficult to conceive of what "camping" means, if it does not include pitching a tent and building a fire. . . . With all its frailties, the English language, as used in this

country for several centuries, and as used in the Park Service regulations, could hardly be plainer in informing the public that camping in Lafayette Park was prohibited.

*Id.* at 300, 104 S.Ct. 3065 (Burger, C.J., concurring). While arguably *Clark* may have implicitly assumed the National Park Service regulation was not vague, it did not analyze or contain any discussion of the vagueness doctrine as applied to the regulation. *Clark,* then, is not specifically instructive in this regard.

### X.

Respondent cites the following other cases.[7] However, in these cases the language, noted *supra,* as seemingly rendering the Honolulu Camping regulation vague was not employed, and qualifying language in the applicable law removed ambiguity. In *Joel v. City of Orlando,* 232 F.3d 1353 (11th Cir. 2000), *cert. denied,* 532 U.S. 978, 121 S.Ct. 1616, 149 L.Ed.2d 480 (2001), the federal court indicated that additional indications of "actual camping" were required beyond sleeping on city property.

> Section 43.52 of the City Code provide[d in part]:
>
> Camping Prohibited; exceptions.
>
> (1) For the purposes of this section, "camping" is defined as:
>
>> (a) Sleeping or otherwise being in a temporary shelter out-of-doors; or
>>
>> (b) Sleeping out-of-doors; or
>>
>> (c) Cooking over an open flame or fire out-of-doors.
>
> . . . .

7. Although not cited in its Answering Brief, Respondent cited *United States v. Thomas,* 864 F.2d 188 (D.C.Cir.1988), at oral argument, where the court there held that an anticamping regulation was not unconstitutionally vague as applied to defendants attempting to maintain a "constant, . . . expressive presence in Lafayette Park." *Id.* at 190. There, the definition of "camping" was nearly identical to the definition in the instant case. *Id. Thomas* is distinguishable in that the court there did not base its holding on whether an ordinary person was provided with fair notice that contemplated conduct was prohibited by the statute, but on whether the specific defendants received such fair notice. *Id.* at 196. That court concluded that the defendants, in attempting to

achieve "continuous presence" in the park, had fair notice that their conduct, including "lying prone each night and early morning in sleeping bags and on blankets, motionless, with eyes shut, and surrounded by bags and (perhaps) clothing[,]" was prohibited by the anticamping regulation. *Id.* at 197.

The D.C. circuit court did not inquire into whether the regulation could be unconstitutionally vague because "cases less clear than the [defendants'] may exist" as such "review considers the overbreadth or facial validity of the challenged enactment." *Id.* at 198. However, the defendants did not allege that the regulation was overbroad or facially invalid.

[In conjunction with the Code], the City promulgated a handbook . . . [that in pertinent part] read as follows:

> Local court rulings have held that in order to "camp", the suspect must do more than simply fall asleep on city property. There must be some indication of actual camping. One or more of the following should exist before an arrest under this section is appropriate:
>
> (1) the property must be public property, including highway overpasses;
>
> (2) the suspect is inside a tent or sleeping bag, or the suspect is asleep atop and/or covered by materials (i.e. bedroll, cardboard, newspapers), or inside some form of temporary shelter;
>
> (3) the suspect has built a campfire;
>
> (4) the suspect is asleep and when awakened volunteers that he has no other place to live. . . . Simply being asleep in a public place during late night or early morning hours makes the camping case stronger, but is not alone sufficient to justify an arrest under this section unless there is some indicia of true "camping" as noted above.

*Id.* at 1356 (emphases added). Unlike the instant case, that court noted the parties stipulated that the conduct of the defendant, Joel, fell within the definition of camping.

> The affidavit supporting the first arrest stated that *Joel was sleeping atop, and covered by, cardboard* . . . . The affidavit supporting Joel's second arrest stated that he "had his head on his plastic shopping bag that contained miscellaneous clothing." . . . Joel stated that he was using a plastic bag with some possessions as a pillow. . . . *[T]he parties stipulated that there were no material facts in dispute—Joel's conduct is within the definition of "camping" as "sleeping out-of-doors[.]"*

*Id.* at 1360 n. 4 (emphases added).

In *City of Portland v. Johnson,* 59 Or.App. 647, 651 P.2d 1384 (1982), *rev. denied,* 294 Or. 492, 660 P.2d 681 (1983), the ordinance prohibit[ed] "camping"

> ". . . in or upon any . . . public right-of-way or any other place to which the

general public has access, or under any bridgeway or viaduct . . ."

[and] provid[ed] that " 'to camp' means to set up or to remain in or at, a campsite." "Campsite" is defined as:

> ". . . any place where any bedding, sleeping bag or other sleeping matter, or any stove or fire, is placed, established or maintained, whether or not such place incorporates the use of any tent, lean-to, shack or any other structure, or any vehicle or part thereof."

*Id.* at 1385. *Johnson* related that, in addition, the ordinance stated:

> Section 1. The Council finds:
>
> 1. That from time to time persons establish campsites, *for the purpose of maintaining a temporary place to live* . . . .
>
> . . . .

*Id.* at 1386 (internal quotation marks omitted) (emphasis in original). Thus, unlike the instant case, that court decided that camping involved using the site as "a temporary place to live" based on the expressed purpose in the ordinance itself.

> Reading the definition of campsite together with the . . . statement of purpose . . ., it is apparent that the ordinance [does] not . . . prohibit . . . activities . . . such as picnicking on a blanket in a park. . . . It is clear that the type of camping that the ordinance prohibits is that . . . [of a] "purpose of maintaining a temporary place to live."

*Id.*

In *Tobe v. City of Santa Ana,* 9 Cal.4th 1069, 40 Cal.Rptr.2d 402, 892 P.2d 1145 (1995), the ordinance stated:

> Sec. 10–402. Unlawful Camping.
>
> It shall be unlawful for any person to *camp, occupy camp facilities or use camp paraphernalia* in the following areas, except as otherwise provided:
>
> (a) any street;
>
> (b) any public parking lot or public area, improved or unimproved.
>
> Sec. 10–403 Storage of Personal Property in Public Places.

It shall be unlawful for any person to *store personal property, including camp facilities and camp paraphernalia,* in the following areas, except as otherwise provided by resolution of the City Council:

(a) any park;

(b) any street;

(c) any public parking lot or public area, improved or unimproved.

*Id.* at 407–408, 892 P.2d at 1150–51 (emphases added) (footnote omitted). The relevant words were specifically defined:

Section 10–401 of the ordinance defines the terms:

(a) *Camp* means to pitch or occupy camp facilities; to use camp paraphernalia.

(b) *Camp facilities* include, but are not limited to, tents, huts, or temporary shelters.

(c) *Camp paraphernalia* includes, but is not limited to, tarpaulins, cots, beds, sleeping bags, hammocks or non-city designated cooking facilities and similar equipment.

(d) *Park* means the same as defined in section 31–1 of this Code.

(e) *Store* means to put aside or accumulate for use when needed, to put for safekeeping, to place or leave in a location.

(f) *Street* means the same as defined in section 1–2 of this Code.

*Id.* at 408 n.2, 892 P.2d at 1151 n. 2. In deciding the ordinances were not vague, *Tobe* said, "The terms which the Court of Appeal considered vague are not so when the purpose clause of the ordinance is considered and the terms are read in that context[.]" *Id.* at 424, 892 P.2d at 1167. That court indicated:

The stated purpose of the ordinance is to make public streets and other areas readily accessible to the public and to prevent use of public property "for camping purposes or storage of personal property" which "interferes with the rights of others to use the areas for which they were intended." No reasonable person would believe that a picnic ... would constitute camping in violation of the ordinance....

Nor is the term "store" vague.... When read in light of the express purpose of the ordinance—to avoid interfering with use of those areas for the purposes for which they are intended....

*Id.* at 425, 892 P.2d at 1168 (emphasis added). As to an overbreadth challenge, the California court indicated that "[n]either the ... plaintiffs nor the ... petitioners have identified a constitutionally protected right that is impermissibly restricted by application or threatened application of the ordinance." *Id.* at 426, 892 P.2d at 1169.

■ As discussed above, the aforementioned cases cited by Respondent are distinguishable from the instant case. Furthermore, "as the ultimate judicial tribunal with final, unreviewable authority to interpret and enforce the Hawai'i Constitution, we are free to give broader protection under the Hawai'i Constitution than that given by the federal constitution." *State v. Maganis,* 109 Hawai'i 84, 87, 123 P.3d 679, 682 (2005) (internal quotation marks and citation omitted). *See also State v. Texeira,* 50 Haw. 138, 142, 433 P.2d 593, 597 (1967) (stating that "federal decisions do not ... prevent this court from extending greater protection in interpreting the state constitution where we determine it to be appropriate" (footnote omitted)). Thus, this court is not bound by the decisions of other courts insofar as greater protection may be afforded under article 1, section 5 of the Hawai'i constitution.

### XI.

Because the ordinance (in conjunction with the Rule) is unconstitutional, we need not reach Petitioner's fourth argument that the ICA was mistaken in treating the regulation as one imposing absolute liability. Accordingly, the May 3, 2007 judgment of the ICA and the November 10, 2003 judgment of the court are reversed.