**Electronically Filed**
**Intermediate Court of Appeals**
**30109**
**29-NOV-2013**
**08:36 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---


STATE OF HAWAI'I, Plaintiff-Appellee, v.
RANGIE B. ALANGCAS, Defendant-Appellant


NO. 30109


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 09-1-0308)


NOVEMBER 29, 2013


FOLEY, PRESIDING JUDGE, FUJISE AND LEONARD, JJ.


OPINION OF THE COURT BY LEONARD, J.

Defendant-Appellant Rangie B. Alangcas (**Alangcas**) appeals from two interlocutory orders, entered on September 17, 2009, in the Circuit Court of the First Circuit (**Circuit Court**), denying Alangcas's motions to dismiss Counts I and III of Plaintiff-Appellee State of Hawaii's (**State**) indictment against him, both counts alleging electronic enticement of a child in the first degree in violation of Hawaii Revised Statutes (**HRS**) § 707-756 (Supp. 2012).[1]

---

[1] The Honorable Glenn J. Kim presided.

On appeal, Alangcas maintains that the Circuit Court erred in denying his motions to dismiss the indictment on the grounds that HRS § 707-756 is unconstitutionally vague and overbroad, and that it violates the "dormant" Commerce Clause of the United States Constitution.  We affirm.

I.    BACKGROUND

On March 5, 2009, the State obtained an indictment against Alangcas for two counts of electronic enticement of a child in the first degree in violation of HRS § 707-756 (**Counts I and III**), and two counts of attempted promoting pornography for minors in violation of HRS § 705-500 (1993) and HRS § 712-1215 (1993 & Supp. 2012) (**Counts II and IV**).[2]

The charges arose from Alangcas's alleged improper electronic communications with police officers Andrew Brito and Sandi Fujitani, both posing as females under the age of eighteen, known respectively as "kaplma_girl" or "Heather Cabico" and "shoyubunnie" or "Shanna Lee."  Regarding Counts I and III, the indictment alleged that while communicating with the police officers, Alangcas agreed to meet "Heather" and "Shanna" with the "intent to promote or facilitate the commission of a felony that is an offense defined in [HRS] Section 846E-1" and then "intentionally or knowingly travel[ed] to the agreed upon meeting place at the agreed upon meeting time."  Alangcas is alleged to have started communicating with the "minors" on August 29, 2008, and he subsequently arranged two different meetings with them: one at a Starbucks on September 3, 2008; and one at a McDonalds

---

[2]    Counts II and IV are not at issue on this appeal.

2

on March 3, 2009. Immediately following the attempted meeting at McDonald's, Alangcas was apprehended and arrested.

On July 13, 2009, Alangcas filed two separate motions to dismiss the indictment. In the first motion, Alangcas argued that HRS § 707-756 was unconstitutional because the statute violates the dormant Commerce Clause of the United States Constitution. In the second motion, Alangcas argued that HRS § 707-756 is unconstitutionally vague and/or overbroad.

On September 2, 2009, the Circuit Court conducted a hearing on both motions. On September 17, 2009, the Circuit Court entered orders denying Alangcas's motions to dismiss. On September 28, 2009, Alangcas filed a motion for leave to assert an interlocutory appeal from the September 17, 2009 orders, pursuant to HRS § 641-17 (Supp. 2012), which was granted. Algancas timely filed a notice of appeal.

II. POINTS OF ERROR ON APPEAL

Alangcas raises the following points of error:

(1) the Circuit Court erred in determining that HRS § 707-756 does not violate constitutional prohibitions against vague and overbroad regulations; and

(2) the Circuit Court erred in determining that HRS § 707-756 does not violate Article I, Section 8 of the United States Constitution.

III. APPLICABLE STANDARD OF REVIEW

The appellate court reviews questions of constitutional law de novo under the 'right/wrong' standard. See, e.g., State v. Fields, 115 Hawai'i 503, 511, 168 P.3d 955, 963 (2007). Every

3

duly-enacted statute is presumptively constitutional, and the party challenging the statute must carry a heavy burden to overcome this presumption. State v. Gaylord, 78 Hawai'i 127, 137, 890 P.2d 1167, 1177 (1995). Whenever possible, a penal statute will be read narrowly and in such a manner as to preserve the statute's constitutionality. Id. at 137-38, 890 P.2d at 1177-78.

IV. DISCUSSION

A. The Prohibition Against Vague and Overbroad Laws

The Hawai'i Supreme Court has adopted the following conceptual approach to constitutional challenges to penal statutes on vagueness grounds:

> [T]his court has treated claims that a criminal statute is unconstitutionally vague as essentially facial attacks, subject to the following standard: Due process of law requires that a penal statute state with reasonable clarity the act it proscribes and provide fixed standards for adjudging guilt, or the statute is void for vagueness. Statutes must give the person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited so that he or she may choose between lawful and unlawful conduct.
> This standard is essentially indistinguishable from the applicable standard under federal law. Thus we have so far not departed from federal constitutional law in the area of "void for vagueness" challenges to criminal statutes. Under the applicable federal law, a criminal statute is void for vagueness unless it: (1) gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he or she may act accordingly; and (2) provides explicit standards for those who apply the statute, in order to avoid arbitrary and discriminatory enforcement and the delegation of basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis.

Gaylord, 78 Hawai'i at 138, 890 P.2d at 1178 (citations, brackets, internal quotation marks, and ellipsis omitted; format altered); see also State v. Beltran, 116 Hawai'i 146, 151, 172 P.3d 458, 463 (2007). Thus, the Due Process Clause of the Fourteenth Amendment requires that a criminal statute: (1) give

4

a person of ordinary intelligence a reasonable opportunity to know what is prohibited; and (2) provide explicit standards that do not encourage arbitrary enforcement.

The supreme court has articulated the relationship between the void-for-vagueness doctrine and the doctrine of overbreadth as follows:

> The doctrine of overbreadth, although closely related to a vagueness claim, is distinct in that while a statute may be clear and precise in its terms, it may sweep so broadly that constitutionally protected conduct as well as unprotected conduct is included in its proscriptions.

State v. Kaneakua, 61 Haw. 136, 143, 597 P.2d 590, 594 (1979) (citations omitted). Therefore, in order to determine whether a statute is overbroad, we must consider whether it reaches a substantial amount of constitutionally-protected conduct. See Beltran, 116 Hawai'i at 152, 172 P.3d at 464.

The statute at issue here, HRS § 707-756, provides in relevant part:

> **§ 707-756 Electronic enticement of a child in the first degree.** (1) Any person who, using a computer or any other electronic device:
>
> (a) Intentionally or knowingly communicates:
>
>     (i) With a minor known by the person to be under the age of eighteen years;
>     (ii) With another person, in reckless disregard of the risk that the other person is under the age of eighteen years, and the other person is under the age of eighteen years; or
>     (iii) With another person who represents that person to be under the age of eighteen years;
>
> (b) With the intent to promote or facilitate the commission of a felony:
>
>     (i) That is a murder in the first or second degree;
>     (ii) That is a class A felony; or
>     (iii) That is another covered offense as defined in section 846E-1,

> agrees to meet with the minor, or with another person who represents that person to be a minor under the age of eighteen years; and
>
> (c) Intentionally or knowingly travels to the agreed upon meeting place at the agreed upon meeting time,
>
> is guilty of electronic enticement of a child in the first degree.

HRS § 707-756(1) (Supp. 2012).

Alangcas argues that HRS § 707-756 is unconstitutionally overbroad and/or vague because it: (1) unnecessarily ensnares constitutionally-protected conduct; (2) overbroadly criminalizes mere thoughts without providing adequate safeguards; (3) does not require actual intent to commit a crime; (4) subjects criminal liability to the minors it seeks to protect; (5) attempts to ensnare offenses which are impossible to commit; (6) refers to a confusing labyrinth of language that results in guesswork and differences of opinion; and (7) would subject citizens to arrest and prosecution based on the moment-to-moment opinions of police officers. We consider each of these arguments in turn.

First, Alangcas argues that HRS § 707-756(1) broadly ensnares common and legitimate daily behavior by anyone who has a family member, relative, family friend, colleague, student, parishioner, employee, or customer under the age of 18 because the *actus reus* prohibitions are: (1) use a computer or other electronic device to communicate with a person known or claiming to be under 18, or in reckless disregard that the person is under 18; (2) agree to meet that person; and (3) travel to the agreed upon meeting place at the agreed time. In making this argument,

Alangcas ignores the language in subsection (b) of the statute that requires that these otherwise "innocent" acts be done with the intent to promote or facilitate the commission of certain, specified, felonies. See HRS § 707-756(1)(b). When the statute is read as a whole, it is clear that only criminal conduct is proscribed.

Second, Alangcas argues that the statute criminalizes "mere thoughts" without adequate safeguards. Alangcas argues, in part, that the *mens rea* is overbroad because it fails to apply the criminal intent – the intent to promote or facilitate the commission of a specified felony – to all of the *actus reas* elements in the statute. However, Alangcas erroneously reads the statute's three subsections individually, rather than collectively, and ignores the distinct *mens rea* required for each: (1) intentionally or knowingly communicate with a minor (or in reckless disregard of risk that the person is a minor or with a person claiming to be a minor) (HRS § 707-756(1)(a)); (2) *with the intent to promote or facilitate the commission of a specified felony*, agree to meet with that person (HRS § 707-756(1)(b)); **and** (3) intentionally or knowingly travel to the agreed upon meeting place at the agreed upon time (HRS § 707-756(1)(c)). All three *mens rea* requirements must be met, and, because the statute requires all three paragraphs of the statute to be read together, only behavior done with the requisite criminal intent is proscribed, *i.e.*, conduct that occurs with the intent to promote or facilitate the commission of a felony. We agree with Alangcas that intentionally or knowingly

7

communicating with a minor is not a crime.  However, doing so, *and* agreeing to meet with the minor with the intent to promote or facilitate the commission of a specified felony, *and* intentionally or knowingly proceeding to the meeting place at the specified time, sufficiently identifies the *mens rea* for each of the acts which together constitute the criminal offense.  Such a prohibition does not broadly sweep in innocent electronic communications with minors.

Alangcas contends that the overbroad *mens rea* scheme in HRS § 707-756 widens the door for abuse, in particular, entrapment and enticement of a defendant by law enforcement officers and false allegations by disgruntled complainants, and effectively precludes any renunciation of intent to complete the crime.[3]  However, Alangcas fails to explain or support his argument that the possibility of entrapment or false accusations renders a statute unconstitutional.  The evidence has not yet been developed in this case, and Alangcas is or may be entitled to raise an affirmative defense of entrapment, pursuant to HRS § 702-237 (1993), and/or renunciation, pursuant to HRS § 705-530 (1993).  As in most cases, the trier-of-fact will have to determine the truth or falsity of the complainant's accusations.

---

[3]     With this argument, Alangcas also argues that HRS § 707-756 was passed in order to prevent defendants from exercising their statutory and constitutional rights in their defense to the charge of attempted sexual assault.  This argument is unavailing.  The legislative history plainly indicates the legislative intent to create a distinct crime:  "Current laws do not specifically address using computers to communicate with minors for the purposes of committing crime."  S. Stand. Comm. Rep. No. 2867, in 2002 Senate Journal, at 1384.  The purpose of the statute was not to circumvent the attempt statute, but to "criminalize the sex offender's predatory computer behavior, so that the offender can be prosecuted for what the offender has actually done, as opposed to what the offender may have been trying to do."  Id.

With respect to unconstitutional vagueness or overbreadth, these arguments are without merit.

Third, Alangcas argues that HRS § 707-756 does not require actual intent to commit a crime. We disagree. As discussed above, the statute plainly criminalizes conduct (described above) that is coupled with the intent to promote or facilitate the commission of a felony. See HRS § 707-756(1) (Supp. 2012).

Fourth, Alangcas argues that HRS § 707-756 is so vague and overbroad that it improperly subjects minors to criminal liability. However, we need not address this claim because "[a] person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may conceivably be applied unconstitutionally to others." Beltran, 116 Hawai'i at 150, 172 P.3d at 462 (citations omitted). Consistent with traditional rules of standing, "[c]onstitutional rights may not be asserted vicariously." State v. Bereday, 120 Hawai'i 486, 498, 210 P.3d 9, 21 (App. 2009) (citation omitted). "Courts are not to anticipate a question of constitutional law in advance of the necessity of deciding it." State v. Marley, 54 Haw. 450, 457, 509 P.2d 1095, 1101 (1973) (citation and internal quotation marks omitted).

Fifth, Alangcas argues that HRS § 707-756 is so vague and overbroad that it attempts to ensnare offenses in HRS § 846E-1 which are impossible to commit. As an example, Alangcas argues

that the statute allows the prosecution of an attempt to

"recklessly" subject a person to an act of sexual penetration by

compulsion in violation of HRS § 707-732(1)(c),[4] one of the

covered offenses enumerated in HRS § 846E-1 (Supp. 2012).[5]

---

[4]     We presume that Alangcas's reference to HRS § 707-732(1)(c) was intended to reference HRS § 707-732(1)(a), which provides:

> **§ 707-732  Sexual assault in the third degree.**  (1) A person commits the offense of sexual assault in the third degree if:
> (a)     The person recklessly subjects another person to an act of sexual penetration by compulsion;

[5]     HRS § 707-756(1)(b) states (emphasis added):

> (b)     With the intent to promote or facilitate the commission of a felony:
>
> (i)     That is a murder in the first or second degree;
> (ii)    That is a class A felony; or
> (iii)   **That is another covered offense as defined in section 846E-1**,
>
> agrees to meet with the minor, or with another person who represents that person to be a minor under the age of eighteen years; . . .

HRS § 846E-1 (Supp. 2012) includes the following definitions of "covered offense" and the terms used in the definition of a covered offense:

> "Covered offense" means a criminal offense that is:
> (1)     A crime within the definition of "crimes against minors" in this section; or
> (2)     A crime within the definition of "sexual offense" in this section.

> "Crime against minors" excludes "sexual offenses" as defined in this section and means a criminal offense that consists of:
> (1)     Kidnapping of a minor, by someone other than a parent;
> (2)     Unlawful imprisonment in the first or second degree that involves the unlawful imprisonment of a minor by someone other than a parent;
> (3)     An act, as described in chapter 705, that is an attempt, criminal solicitation, or criminal conspiracy to commit one of the offenses designated in paragraph (1) or (2); or
> (4)     A criminal offense that is comparable to or which exceeds one of the offenses designated in paragraphs (1) through (3) or any federal, military, or out-of-state conviction for any offense that, under the laws of this State would be a crime against minors as designated in paragraphs (1) through (3).

(continued...)

[5](...continued)

. . . .

"Sexual offense" means an offense that is:

(1)    Set forth in section 707-730(1)(a), 707-730(1)(b), 707-730(1)(c), 707-730(1)(d) or (e), 707-731(1)(a), 707-731(1)(b), 707-731(1)(c), 707-732(1)(a), 707-732(1)(b), 707-732(1)(c), 707-732(1)(d), 707-732(1)(e), 707-732(1)(f), 707-733(1)(a), 707-733.6, 712-1202(1)(a) 712-1202(1)(b), or 712-1203(1), but excludes conduct that is criminal only because of the age of the victim, as provided in section 707-730(1)(b), or section 707-732(1)(b) if the perpetrator is under the age of eighteen;

(2)    An act defined in section 707-720 if the charging document for the offense for which there has been a conviction alleged intent to subject the victim to a sexual offense;

(3)    An act that consists of:

    (A)    Criminal sexual conduct toward a minor, including but not limited to an offense set forth in section 707-759;

    (B)    Solicitation of a minor who is less than fourteen years old to engage in sexual conduct;

    (C)    Use of a minor in a sexual performance;

    (D)    Production, distribution, or possession of child pornography chargeable as a felony under section 707-750, 707-751, or 707-752;

    (E)    Electronic enticement of a child chargeable under section 707-756 or 707-757 if the offense was committed with the intent to promote or facilitate the commission of another covered offense as defined in this section; or

    (F)    Solicitation of a minor to practice prostitution;

(4)    A violation of privacy under section 711-1110.9;

(5)    A criminal offense that is comparable to or that exceeds a sexual offense as defined in paragraphs (1) through (4) or any federal, military, or out-of-state conviction for any offense that under the laws of this State would be a sexual offense as defined in paragraphs (1) through (4); or

(6)    An act, as described in chapter 705, that is an attempt, criminal solicitation, or criminal conspiracy to commit one of the offenses designated in paragraphs (1) through (5).

Except as otherwise expressly noted, this Opinion references the Hawaii Revised Statutes 2012 Supplement versions of both HRS §§ 707-756 and 846E-1. Through the date of this Opinion, there have been no changes to HRS § 707-756 since May 16, 2008, which is prior to the alleged criminal conduct in this case. HRS § 846E-1, however, has been subject to numerous revisions during that period, which revisions are all minor and/or not relevant to the constitutional challenges raised in this appeal. See 2013 Haw. Sess. Laws Act 247, § 5 at 746-47 (effective July 1, 2013); 2013 Haw. Sess. Laws Act 64, § 3, 4 at 114-16 (effective Apr. 30, 2013); 2011 Haw. Sess. Laws Act 125, § 1 at 327-28 (effective July 1, 2011); 2009 Haw. Sess. Laws Act 11, § 10 at 17

(continued...)

Alangcas has not presented any argument the he, himself, has been charged in connection with an impossible-to-commit offense. The indictment merely identifies the underlying offense as a felony "that is an offense defined in [HRS] Section 846E-1." At this stage in the proceedings, the prosecution has not explicitly stated, nor is required to state, which specific offense in HRS § 846E-1 comprises Alangcas's charge. See State v. Nicholson, 120 Hawaiʻi 480, 485, 210 P.3d 3, 8 (App. 2009) (rejecting defendant's claim that the indictment for HRS § 707-756 failed to adequately state an offense because it did not specify which offense defined in HRS § 846E-1 the defendant intended to commit). Indeed, the only issues raised in this interlocutory appeal involve the constitutionality of the statute, not the sufficiency of the charge.

Moreover, HRS § 707-756 does not seek to criminalize an "attempt" to commit another offense. It criminalizes predatory behavior through the use of computers or other electronic devices. As discussed above, the statute clearly describes the actions, attendant circumstances, and mens rea that constitute the violation of law, i.e., (1) intentionally or knowingly communicate with a minor (or in reckless disregard of risk that the person is a minor or with a person claiming to be a minor) (HRS § 707-756(1)(a)); (2) with the intent to promote or facilitate the commission of a specified felony, agree to meet

_____

[5](...continued)
(effective Apr. 21, 2009); 2008 Haw. Sess. Laws Act 80, § 4 at 229-30 (effective Jan. 1, 2009). Therefore, for purposes of simplification and clarity, the version of HRS § 846E-1 that appears in the 2012 Supplement is quoted and discussed herein, except as otherwise specifically indicated.

with that person (HRS § 707-756(1)(b)); and (3) intentionally or knowingly travel to agreed upon meeting place at the agreed upon time (HRS § 707-756(1)(c)). The completion of the specified actions, with the required *mens rea* under the attendant circumstances constitutes a "complete crime" and not an attempt to commit another offense. Cf. State v. Holbron, 80 Hawai'i 27, 34-35, 904 P.2d 912, 919-20 (1995) (discussing the distinction between an attempted criminal act and the complete crime; also discussing the impossibility of an attempt (an intentional act) to commit manslaughter (a crime involving a reckless state of mind)).

Sixth, Alangcas argues that HRS § 707-756 is void for vagueness because "it refers to a confusing labyrinth of language in [HRS] § 846E-1 that results in guesswork and differences in opinion." As noted above, the import of the definitions in HRS § 846E-1 stems from the incorporation of the definitions into HRS § 707-756(1)(b)(iii) (emphasis added):

> (b) With the intent to promote or facilitate the commission of a felony:
>  . . . .
>
> (iii) That is another covered offense as defined in section 846E-1,
>
> agrees to meet with the minor, or with another person who represents that person to be a minor under the age of eighteen years; . . .

Thus, engaging in the conduct described in HRS § 707-756, with the intent to promote or facilitate the commission of a felony that is a "covered offense" as defined in HRS § 846E-1, constitutes an offense under the electronic enticement statute. HRS Chapter 846E is the Hawai'i sex offender registration

statute, requiring sex offenders and persons convicted of certain crimes against minors to register with the attorney general and otherwise comply with the statute's requirements.

"Covered offense," as defined in HRS § 846E-1, includes crimes against minors and sexual offenses, which are also defined in HRS § 846E-1:

> "Covered offense" means a criminal offense that is:
> (1)  A crime within the definition of "crimes against minors" in this section; or
> (2)  A crime within the definition of "sexual offense" in this section.

Crimes against minors and sexual offenses are each defined by reference to:  (1) a description of an offense – for example, "[k]idnapping of a minor, by someone other than a parent"; (2) a Hawaiʻi Penal Code section that imposes criminal liability for the offense described therein; or (3) a "catchall" provision, as discussed further below.  See HRS § 846E-1 (which is set forth in note 6 above).  Alangcas does not provide any further argument, nor do we conclude, that the incorporation of the former two categories (descriptions of the particular offenses and/or references to other Hawaiʻi Penal Code sections) renders HRS § 706-756 unconstitutionally vague on its face. Instead, Alangcas contends, *inter alia*, that the catchall provisions leave persons of ordinary intelligence "to guess and no doubt differ in opinion" as to what offenses are included.

The catchall provisions are set forth in the following bolded paragraphs of the HRS § 846E-1 definitions of crime against minors and sexual offense (emphasis added):

> "Crime against minors" excludes "sexual offenses" as defined in this section and means a criminal offense that consists of:

14

     (1)    Kidnapping of a minor, by someone other than a parent;

     (2)    Unlawful imprisonment in the first or second degree that involves the unlawful imprisonment of a minor by someone other than a parent;

     (3)    An act, as described in chapter 705, that is an attempt, criminal solicitation, or criminal conspiracy to commit one of the offenses designated in paragraph (1) or (2); or

     (4)    **A criminal offense that is comparable to or which exceeds one of the offenses designated in paragraphs (1) through (3) or any federal, military, or out-of-state conviction for any offense that, under the laws of this State would be a crime against minors as designated in paragraphs (1) through (3)**.

And

"Sexual offense" means an offense that is:

     (1)    Set forth in section . . .;

     (2)    An act defined in section 707-720 if . . .;

     (3)    An act that consists of:

         (A)    Criminal sexual conduct toward a minor, including . . .;

         (B)    Solicitation of a minor who is less than fourteen years old to engage in sexual conduct;

         (C)    Use of a minor in a sexual performance;

         (D)    Production, distribution, or possession of child pornography chargeable as a felony under section . . . ;

         (E)    Electronic enticement of a child chargeable under section 707-756 or 707-757 if the offense was committed with the intent to promote or facilitate the commission of another covered offense as defined in this section; or

         (F)    Solicitation of a minor to practice prostitution;

     (4)    A violation of privacy under section 711-1110.9;

     (5)    **A criminal offense that is comparable to or that exceeds a sexual offense as defined in paragraphs (1) through (4) or any federal, military, or out-of-state conviction for any offense that under the laws of this State would be a sexual offense as defined in paragraphs (1) through (4)**; or

     (6)    An act, as described in chapter 705, that is an attempt, criminal solicitation, or criminal conspiracy to commit one of the offenses designated in paragraphs (1) through (5).

We necessarily construe these catchall provisions in light of common sense, precedent, and legislative history. See Gaylord, 78 Hawai'i at 137, 890 P.2d at 1177. When doing so, we must bear in mind the dual roles of these definitions in HRS Chapter 846E and HRS § 707-756. But first, we must look at the

language of the statute itself.  See, e.g., HGEA v. Lingle, 124

Hawai'i 197, 207 n.16, 239 P.3d 1, 11 n.16 (2010).

The parallel catchall language in the HRS § 846E-1

definitions of crime against minors and sexual offense can be

plainly read as having two parts:  (1) a criminal offense that is

"comparable to or exceeds" a crime against minors/sexual offense,

as such crime against minors/sexual offense is defined in the

statute; or (2) any federal, military, or out-of-state conviction

for any offense that under the laws of this State would be a

crime against minors/sexual offense, as such crime against

minors/sexual offense is defined in the registration statute.

HRS § 846E-1.  Because the analysis is somewhat simpler, we will

address the second clause first.

In the context of the registration statute (HRS Chapter

846E), the second clause is plainly and clearly intended to

insure that Hawai'i can keep track of and notify the community of

the whereabouts of persons who have been convicted elsewhere (in

federal, military, or other state court proceedings) of a

criminal offense that would constitute a crime against minors or

a sexual offense under Hawai'i law.  See State v. Guidry, 105

Hawai'i 222, 236, 96 P.3d 242, 256 (2004) (stating that

"registration requirements to protect the public have not

'historically been regarded as a punishment[,]' but as 'valid

regulatory technique with a remedial purpose[]'").  In the

context of the electronic enticement statute (HRS § 707-756), the

second clause is merely redundant.  Engaging in the acts

specified in HRS § 707-756(1), with the intent to promote or

facilitate a felony that would constitute a crime against minors or sexual offense under Hawaiʻi law, is a violation of Hawaiʻi's electronic enticement statute, whether or not the intended felony would also constitute a felony under the laws of another jurisdiction. Although the second part of the catchall provision contains some redundancy in its application to HRS § 707-756(1), the criminal prohibition is clear.

In the context of both crimes against minors and sexual offenses, the first part of the catchall provision includes any criminal offense that is "comparable to" or "exceeds" one of the specifically-described offenses. There is no constitutionally-infirm vagueness in the concept of a criminal offense that is "comparable to" a described offense. A person of ordinary intelligence can easily understand that a comparable offense is an equivalent one — one that may be described using slightly different words, but that is plainly intended to prohibit the same criminal activity.

The concept of an offense that "exceeds" a specifically-described offense is more problematic. A person of ordinary intelligence can perhaps understand that if one offense "exceeds" another, it is, in some way, a worse crime. But in what way? Does it mean that it involves aggravated circumstances or sexually violent behavior, has greater potential criminal penalties, and/or otherwise involves generally more reprehensible behavior? Does it include offenses that "exceed" but do not otherwise fall within the range of offenses defined as crimes against minors or sexual offenses?

17

Alangcas argues that persons of ordinary intelligence are left to guess and no doubt differ in opinion as to what offenses are comparable to or exceed the offenses mentioned in the statute and further argues that such guesswork creates a danger of discriminatory enforcement on an *ad hoc* and subjective basis. In response, the State simply argues that the catchall provision is "neither unclear nor vague" and "clearly refers to crimes in other jurisdictions that would be the equivalent to" the crimes identified in the preceding three paragraphs. Although we agree with the State's construction with respect to "comparable" offenses, the statute lacks any intrinsic definition, explanation, or other tools for determining what offenses "exceed" the enumerated offenses. Surely it involves otherwise criminal conduct, but the statute is wholly lacking in specificity. With respect to its incorporation into the electronic enticement statute, the definition of an offense that "exceeds" other offenses "falls short of due process demands" because it "neither gives fair notice to a person what conduct is prohibited nor prescribes fixed standards for adjudging guilt when that person stands accused." In re Doe, 54 Haw. 647, 650, 513 P.2d 1385, 1388 (1973) (citations and internal quotation marks omitted) (holding that Honolulu curfew ordinance was unconstitutionally vague because, *inter alia*, the word "wanders" was not susceptible to an agreed upon understanding).

The legislative history of HRS § 846E-1 also sheds no light on what offenses were intended to fall within the ambit of offenses that "exceed" the enumerated covered offenses. When the

18

sex offender registration and notification statute was originally enacted in 1997, the catchall provisions referred to "any . . . law similar" in other jurisdictions or a criminal offense that is "comparable to a sexually violent offense." See HRS § 846E-1 (Supp. 1997). The current comparable-to-or-exceeds language was added in 2005. The legislative history of the 2005 amendments to HRS § 846E-1 states the general purpose, i.e., "to protect the public by amending laws governing public access to registration information on certain sex offenders and offenders against children," as well as certain specific purposes unrelated to the catchall provision. See, e.g., S. Stand. Comm. Rep. No. 998, in 2005 Senate Journal, at 1504. It was noted by the Senate Ways and Means Committee that the measure had been amended to "[e]xpand applicability of [the] presumption that registration and public access apply to include covered offenders who are sexually violent predators, aggravated sex offenders, or recidivist sex offenders." Id. at 1505. However, it appears that the Committee was referring to the 2005 amendments that added definitions of and other provisions concerning violent predators, aggravated sex offenders, and repeat sex offenders. See HRS § 846E-1 (Supp. 2005).

We note that, in 2008, HRS § 846E-1 was further amended to delete the definition of and other provisions concerning violent predators and aggravated sex, while maintaining the comparable-to-or-exceeds language in the catchall provision. See HRS § 846E-1 (Supp. 2008). Other than reporting that the bill made "numerous revisions" to HRS Chapter 846E, the legislative

history of the 2008 amendment is silent on the specific revisions to HRS § 846E-1. See Conf. Comm. Rep. No. 82-08, in 2008 Senate Journal, at 822-23; H. Stand. Comm. Rep. No. 727-08, in 2008 House Journal, at 1285; S. Stand. Comm. Rep. No. 3407, 2008 Sess.,

http://www.capitol.hawaii.gov/session2008/CommReports/HB3040_SD1_SSCR3407_.pdf. The house committee report on the first draft of the 2008 amendment, however, does report that the purpose of the bill is, in part, to revise the sex offender registration statute to "conform with recent changes to the federal model." H. Stand. Comm. Rep. No. 727-08, in 2008 House Journal, at 1285. This reference to the "federal model" is, perhaps, the key to the development of the Hawaiʻi registration statute, including the definitions in HRS § 846E-1.

As explained by the Hawaiʻi Supreme Court in State v. Chun, 102 Hawaiʻi 383, 76 P.3d 935 (2003):

> [I]n promulgating HRS ch. 846E, the legislature expressly declared that one of its purposes was to comply with the registration requirements for certain sex offenders established by the Jacob Wetterling Crimes against Children and Sexually Violent Offender Registration Act of 1994, Pub.L. No. 103-322, 108 Stat. 1796, 2038 [hereinafter, the **Wetterling Act**], as amended by Megan's Law, Pub.L. No. 104-145 (1996), and the Pam Lynchner Sexual Offender Tracking and Identification Act of 1996, Pub.L. No. 104-236 (codified as amended at 42 U.S.C. § 14071 (2000))[.] . . .
> The Wetterling Act directs the United States Attorney General to "establish guidelines for state programs that require . . . a person who is convicted of a criminal offense against a victim who is a minor or who is convicted of a sexually violent offense to register a current address with a designated State law enforcement agency[.]" 42 U.S.C. § 14071(a)(1)(A). The guidelines note that the Wetterling Act's registration requirements "constitute a floor for state programs, not a ceiling." Final Guidelines for the Wetterling Act, 61 Fed. Reg. 15110, 15112 (1996). States that fail to comply with the program described in the Wetterling Act face the loss of certain federal funds that they would otherwise receive. 42 U.S.C. § 14071(g)(2)(A).

<u>Chun</u>, 102 Hawai'i at 388, 76 P.3d at 940 (bold added; footnotes noting amendments to the Wetterling Act and the U.S. Attorney General's Guidelines are omitted).

It appears that the definition of a covered offense (in Hawai'i's registration statute) by reference to a crime that "is comparable to or exceeds" another crime stemmed from a 1997 amendment to the Wetterling Act. The Wetterling Act was enacted in 1994, and amended in 1996 (twice), 1997, 1998, 2000, 2003, and in 2006 (twice), with the final amendment repealing the Wetterling Act effective July 27, 2009,[6] when it was replaced by the Adam Walsh Child Protection and Safety Act of 2006.[7]

The original Wetterling Act was a part of the Violent Crime Control and Law Enforcement Act of 1994. Pub. L. No. 103-322, § 170101, 108 Stat. 2038 (1994). The 1994 version of the Wetterling Act included the following definitions:

> (A) The term 'criminal offense against a victim who is a minor' means **any criminal offense that consists of**--
> (i) kidnapping of a minor, except by a parent;
> (ii) false imprisonment of a minor, except by a parent;
> (iii) criminal sexual conduct toward a minor;
> (iv) solicitation of a minor to engage in sexual conduct;
> (v) use of a minor in a sexual performance;
> (vi) solicitation of a minor to practice prostitution;
> (vii) any conduct that by its nature is a sexual offense against a minor; or

---

[6]     <u>See</u> Pub. L. No. 109-248, § 2, 120 Stat. 589 (2006); Pub. L. No. 109-162, § 1153(b), 119 Stat. 3113 (2006); Pub. L. No. 108-21, §§ 604(a), 605(a), 606, 117 Stat. 688 (2003); Pub. L. No. 106-386, § 1601(b)(1), 114 Stat. 1537 (2000); Pub. L. No. 105-314, § 607(a), 112 Stat. 2985 (1998); Pub. L. No. 105-119, § 115(a)(1)-(5), 111 Stat. 2461-63 (1997); Pub. L. No. 104-236, §§ 3-7, 110 Stat. 3096-97 (1996); Pub. L. No. 104-145, § 2, 110 Stat. 1345 (1996); Pub. L. No. 103-322, § 170101, 108 Stat. 2038 (1994).

[7]     July 27, 2006 was the 25th anniversary of the abduction and murder of 6-year-old Adam Walsh in Hollywood, Florida. Thereafter, Adam's parents dedicated themselves to protecting children from attacks of child predators and bringing child predators to justice. Pub. L. No. 109-248, § 2, 120 Stat. 589 (2006).

(viii) an attempt to commit an offense described in any of clauses (i) through (vii), if the State--
(I) makes such an attempt a criminal offense; and
(II) chooses to include such an offense in those which are criminal offenses against a victim who is a minor for the purposes of this section.
For purposes of this subparagraph conduct which is criminal only because of the age of the victim shall not be considered a criminal offense if the perpetrator is 18 years of age or younger.

(B) The term 'sexually violent offense' means **any criminal offense that consists of** aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of title 18, United States Code, or as described in the State criminal code) or an offense that has as its elements engaging in physical contact with another person with intent to commit aggravated sexual abuse or sexual abuse (as described in such sections of title 18, United States Code, or as described in the State criminal code).

(C) The term 'sexually violent predator' means a person who has been convicted of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

(D) The term 'mental abnormality' means a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons.

(E) The term 'predatory' means an act directed at a stranger, or a person with whom a relationship has been established or promoted for the primary purpose of victimization.

Pub. L. No. 103-322, § 170101(a)(3), 108 Stat. 2038 (1994) (emphasis added).[8] Thus, the original Wetterling Act defined the crimes covered therein by reference to a criminal offense that "consists of" the criminal conduct described therein.

The 1997 amendment to the Wetterling Act, *inter alia*, changed the act's definitions. With respect to the term "criminal offense against a victim who is a minor," in 42 U.S.C.

---

[8] Pursuant to the 1994 Wetterling Act, states were required to establish registration programs for any person who is convicted of a "criminal offense against a victim who is a minor" or a "sexually violent offense," as well as any person who is a "sexually violent predator," as defined above. Pub. L. No. 103-322, Title XVII, § 170101(a)(1), 108 Stat. 2038 (1994).

§ 14071(a)(3)(A), "that consists of —" was stricken and replaced with "in a range of offenses specified by State law which is **comparable to or which exceeds** the following range of offenses:". Pub. L. No. 105-119, § 115(a), 111 Stat. 2461 (1997) (emphasis added). With respect to the term "sexually violent offense", in 42 U.S.C. § 14071(a)(3)(B), "that consists of —" was stricken and replaced with "in a range of offenses specified by State law which is **comparable to or which exceeds** the following range of offenses encompassed by." Id. Perhaps because Public Law 105-119 (1997 H.R. 2267) was a joint agency appropriations act, we have been unable to glean any illuminating legislative history pertaining to the amendments to the Wetterling Act definitions. It appears, generally, that the 1997 amendments to the Wetterling Act were intended to strengthen the States' sex registration programs and to close loopholes that might allow convicted sex offenders to avoid registration. See, e.g., 143 Cong. Rec. H7626-01 (daily ed. Sept. 23, 1997), 1997 WL 586254 (U.S. House of Representatives floor discussion of 1997 H.R. 1683, which contained the same language as the subject provisions in 1997 H.R. 2267).

The parties cited no cases from this or any other jurisdiction addressing the issue of a crime being defined in terms of "exceeding" another offense, let alone whether such a reference is or is not constitutionally infirm. Upon review, we have found no clear guidance in other cases.[9]

---

[9] Although helpful to understanding the genesis of HRS Chapter 846E, State v. Chun, 102 Hawai'i 383, 76 P.3d 935 (2003), addresses whether indecent
(continued...)

In sum, based upon common sense, plain meaning, an examination of the statutory language, and consideration of the legislative context and history of the Hawai'i statutes and the related federal laws, there is no constitutionally-infirm vagueness in the catchall provision's "comparable to" language; however, the language regarding a criminal offense that "exceeds" one of the specifically-described offenses is unconstitutionally vague.

Nevertheless, despite the constitutional infirmity of the "exceeds" language in HRS § 846E-1, the Circuit Court in the present case did not err. This is because "before a law may be held to be unduly vague, in violation of due process, it must be demonstrated that the law is impermissibly vague in all its applications." State v. Sturch, 82 Hawai'i 269, 275, 921 P.2d 1170, 1176 (App. 1996) (brackets and internal quotation marks omitted) (citing Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 (1982)). "Accordingly, a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Id. at 275, 921 P.2d at 1176 (internal quotation marks omitted).

In the present case, Alangcas did just that because there is evidence that Alangcas engaged in clearly proscribed

---

[9](...continued)
exposure constitutes an offense that entails criminal sexual conduct under the registration statute, holding that it does not. As the court held that an indecent exposure conviction does not trigger registration requirements, Chun does not reach the constitutional issue raised by the appellant therein, which was different than the grounds cited herein. Id. at 385, 390, 76 P.3d at 937, 942.

conduct in violation of all three prongs of HRS § 707-756(1). As applicable here to the second prong, HRS § 707-756(1)(b)(iii) states that the defendant must "agree to meet with the minor" "[w]ith the intent to promote or facilitate the commission of a felony . . . [t]hat is another covered offense as defined in section 846E-1." Section 846E-1 identifies various "covered offense[s]," including sexual assault in the first[10] and third[11] degrees, which are consistent with evidence of Alangcas's stated intent of having sexual relations with the "girls."[12] Because that behavior falls under a "clearly proscribed" "covered offense," the "exceeds" language in HRS § 846E-1 is unnecessary to sustain a conviction against Alangcas, and he cannot complain of the vagueness of the law as applied to him. See id. at 275, 921 P.2d at 1176 (internal quotation marks omitted).

---

[10] HRS § 707-730 (Supp. 2012) states, in relevant part:

> **§ 707-730 Sexual assault in the first degree.** (1) A person commits the offense of sexual assault in the first degree if:
> (c) The person knowingly engages in sexual penetration with a person who is at least fourteen years old but less than sixteen years old[.]

[11] HRS § 707-732 (Supp. 2012) states, in relevant part:

> **§707-732 Sexual assault in the third degree.** (1) A person commits the offense of sexual assault in the third degree if:
> (c) The person knowingly engages in sexual contact with a person who is at least fourteen years old but less than sixteen years old or causes the minor to have sexual contact with the person[.]

[12] Alangcas admitted in an interview with police that he intended to "engage in sexual conduct" with the two 14-year-old "girls" and that he sent them pornographic website information. He also stated his intentions to have sexual intercourse and contact with the "girls" through his online communications.

Seventh, Alangcas finally argues that the *actus reus* of HRS § 707-756 is void because of vagueness, overbreadth, and because it "would subject citizens to arrest and/or prosecution based on the moment-to-moment opinions of policemen on the beat." Citing Territory v. Anduha, 31 Haw. 459, 461 (1930), Alangcas argues that the statute does not draw a distinction between "conduct that is calculated to harm and that which is essentially innocent." Contrary to Alangcas's claim, though, the *actus reus* of HRS § 707-756 (including the word "communicates") is not unconstitutionally vague/overbroad.

The language of HRS § 707-756 is not the type of limitless and highly subjective language previously struck down by the Hawai'i Supreme Court. In Beltran, the court determined that the phrases "reasonably appears," "in light of the circumstances," and "in fact" rendered the ordinance unconstitutionally vague because "the standard requires the actor to view his or her conduct as a third person would, rather than informing the actor as to how to avoid violating the regulation." Beltran, 116 Hawai'i at 154, 172 P.3d at 466. The court also found vagueness because it was "susceptible of subjective application among persons enforcing the regulation and those who must abide by it." Id. In other words, the language created a standard that vested "virtually complete discretion in the hands of the police to determine whether a person has violated the regulation." Id. The court similarly struck down several other statutes, based on vagueness/overbreadth, that were subjective and vulnerable to an *ad hoc* administration of justice by

26

"policemen on the beat." See, e.g., State v. Grahovac, 52 Haw. 527, 535, 480 P.2d 148, 153 (1971) (striking down a statute that prohibited "wandering"); Anduha, 31 Haw. at 459 (striking down a statute that made it a misdemeanor to "habitually loaf, loiter or idle upon any public street or highway").

Unlike the cases cited above, however, the statute in the present case does not contain this type of limitless and highly subjective language (i.e., "reasonably appears," "loaf," "wander," etc.). A plain reading of the statute makes clear that HRS § 707-756 only attaches culpability when a defendant intentionally or knowingly communicates with a minor, agrees to meet the minor with the intent to promote or facilitate a felony, and then intentionally or knowingly travels to the agreed upon place at the agreed upon time. See HRS § 707-756 (Supp. 2012). The actus reus in each element is clearly defined and unambiguous because there is little subjectivity involved when it comes to a determination about whether a communication, agreement to meet, and actual meeting took place. This is especially true when all three actions, in addition to the requisite intent, must occur before an arrest can be made.

Alangcas asserts that the word "communicates" is the "key action word" that is "undefined" and that it does not distinguish between "conduct that is calculated to harm and that which is essentially innocent." Yet, the word "communicates" (as opposed to more subjective and amorphous words, such as "reasonably" or "wander") has a well-known and popular meaning

that is rather universal.[13] Moreover, when read in conjunction with the rest of the statute, the meaning gains even greater clarity because the communication must take some written or verbal form that eventually includes an agreement to meet the minor (with the intent to promote/facilitate some felonious purpose). See HRS § 707-756(1). Thus, unlike the situations in Beltran, Grahovac, and Anduha, police in the present situation have much less leeway in how they enforce the statute, and the general public has a much better understanding of just what conduct is prohibited.

In light of the foregoing, we conclude that, HRS § 707-756 is not unconstitutionally overbroad and/or vague as applied to Alangcas, and the Circuit Court did not err in denying Alangcas's motion to dismiss the indictment on that basis.

B.    The Alleged Dormant Commerce Clause Violation

Alangcas also argues that the Circuit Court should have dismissed the indictment because HRS § 707-756 violates the dormant Commerce Clause[14] of the United States Constitution. The U.S. Constitution grants Congress the power to regulate commerce "with foreign Nations, and among the several States, and with the Indian tribes." U.S. Const. art. I, § 8, cl. 3. However, "[e]ven if Congress has not specifically regulated an incident of interstate commerce, state laws that unduly burden interstate

---

[13]    Black's Law Dictionary defines "communication" as the following: "The expression or exchange of information by speech, writing, gestures, or conduct." Black's Law Dictionary 316 (9th ed. 2009).

[14]    The "dormant" or "negative" Commerce Clause was a concept first recognized by Justice Thomas Johnson in Gibbons v. Ogden, 22 U.S. 1 (1824).

commerce and thereby impede free private trade in the national marketplace generally violate the so-called dormant commerce clause" of the U.S. Constitution. People v. Hsu, 99 Cal. Rptr. 2d 184, 190 (Cal. Ct. App. 2000) (citing General Motors Corp. v. Tracy, 519 U.S. 278, 287 (1997)). The framework for determining whether a state statute violates the dormant Commerce Clause is set forth in Pike v. Bruce Church, Inc., 397 U.S. 137 (1970):

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

Id. at 142 (internal citation omitted).

Relying primarily on American Liberties Ass'n v. Pataki, 969 F. Supp. 160 (S.D.N.Y. 1997), Alangcas argues that HRS § 707-756 violates the dormant Commerce Clause because: (1) HRS § 707-756 regulates conduct occurring wholly outside of Hawai'i; (2) HRS § 707-756 places burdens on interstate commerce that outweigh the local benefits derived from the statute; (3) statutes regulating the internet, like HRS § 707-756, demand uniform, national regulation as opposed to a patchwork of inconsistent state regulations; and (4) HRS § 707-756 is not a "luring" statute and outlaws conduct/communications that are not harmful to minors. We conclude that HRS § 707-756 does not violate the dormant Commerce Clause.

In Pataki, a federal district court enjoined enforcement of a New York statute that made it a crime for an

individual to intentionally use a computer to engage in communication with a minor that depicted "actual or simulated nudity, sexual conduct or sado-masochistic abuse" and was "harmful to minors[.]" Pataki, 969 F. Supp. at 163, 184 (enjoining prosecution under N.Y. Penal Law § 235.21 (McKinney 1996)). The court in Pataki concluded that the statute violated the dormant Commerce Clause because it unduly burdened interstate commerce in the traffic of "goods, services, or ideas." Pataki, 969 F. Supp. at 173. Specifically, concluding that the internet represents an instrument of interstate commerce, the court held that the statute violated the dormant Commerce Clause based on the following reasons:

> First, the [statute] represents an unconstitutional projection of New York law into conduct that occurs wholly outside New York. Second, the [statute] is invalid because although protecting children from indecent material is a legitimate and indisputably worthy subject of state legislation, the burdens on interstate commerce resulting from the [statute] clearly exceed any local benefit derived from it. Finally, the Internet is one of those areas of commerce that must be marked off as a national preserve to protect users from inconsistent legislation that, taken to its most extreme, could paralyze development of the Internet altogether.

Pataki, 969 F. Supp. at 169.

In People v. Foley, 731 N.E.2d 123 (N.Y. 2000), however, the New York Court of Appeals noted the distinction between "dissemination" statutes, like the one struck down in Pataki, and electronic "luring" statutes, which have been found to withstand Commerce Clause scrutiny. It then distinguished Pataki, concluding that New York's child luring statute, N.Y. Penal Law § 235.22 (McKinney 2008), did not violate the Commerce Clause:

> Penal Law § 235.22 does not discriminate against or burden interstate trade; it regulates the conduct of individuals who intend to use the Internet to endanger the welfare of children. Although Penal Law § 235.22 contains some of the same language as the provision in Penal Law § 235.21(3), struck down in [Pataki], the statute challenged here contains the additional "luring" prong. We are hard pressed to ascertain any legitimate commerce that is derived from the intentional transmission of sexually graphic images to minors for the purpose of luring them into sexual activity. Indeed, the conduct sought to be sanctioned by Penal Law § 235.22 is of the sort that deserves no "economic" protection. Thus, we conclude that Penal Law § 235.22 is a valid exercise of the State's general police powers.

Foley, 731 N.E.2d at 132-33 (internal citations omitted). The court in Foley did not apply the Pike test, finding it inappropriate to do so because New York's child luring statute did not concern interstate commerce. Id. at 133; see also State v. Backlund, 672 N.W.2d 431, 438 (N.D. 2003) (concluding that North Dakota's electronic child luring statute, N.D. Cent. Code § 12.1-20-05.1 (2001), did not violate the Commerce Clause because "it is difficult to ascertain any legitimate commerce that is derived from the willful transmission of explicit or implicit sexual communications to a person believed to be a minor in order to willfully lure that person into sexual activity").

In People v. Hsu, 99 Cal. Rptr. 2d 184 (Cal. Ct. App. 2000), the California Court of Appeals also rejected a Commerce Clause challenge to California's child luring statute, Cal. Penal Code § 288.2 (West 2008), but applied Pike after concluding that "[t]he Internet is undeniably an incident of interstate commerce." Hsu, 99 Cal. Rptr. 2d at 190. The court concluded that California's child luring statute withstood Commerce Clause scrutiny because the states "have a compelling interest in protecting minors from harm generally and certainly from being seduced to engage in sexual activities." Id. (citations

31

omitted). Similarly, in Cashatt v. State, 873 So.2d 430 (Fla. Dist. Ct. App. 2004), the Florida District Court of Appeal, applying Pike and distinguishing Pataki, concluded that Florida's child solicitation statute, Fla. Stat. § 847.0135(3) (2001), did not violate the dormant Commerce Clause:

> Under the test enunciated in *Pike v. Bruce Church, Inc.*, it is clear that the challenged statute does not violate the dormant Commerce Clause of the United States Constitution. The state has a compelling interest in protecting minors from being seduced to perform sexual acts, and no legitimate commerce is burdened by penalizing the transmission of harmful sexual material to known minors in order to seduce them. The effect of section 847.0135(3) on interstate commerce is incidental at best and is far outweighed by the state's interest in preventing harm to minors. Finally, the statute does not burden Internet users with inconsistent state regulations because of the "intent to seduce" element, which makes it much narrower than the statute invalidated in [Pataki], relied upon by appellant.

Cashatt, 873 So.2d at 436 (internal citations omitted).

We agree with the statements in Foley, Backlund, and Hsu that it is difficult to conceive of any legitimate commerce that would be burdened by penalizing predatory computer behavior. Alangcas has failed to identify, nor do we find, any legitimate commerce burdened by HRS § 707-756. As we have already discussed, the statute does not criminalize innocent communication and innocent travel; rather, when construed in accordance with its purpose and common sense, HRS § 707-756 criminalizes the electronic enticement of a child carried out with the intent to promote or facilitate a felony. Accordingly, we conclude that HRS § 707-756 does not concern interstate commerce, and, therefore, scrutiny under the Commerce Clause is not appropriate.

Nevertheless, even assuming, *arguendo*, that HRS § 707-756 warrants Commerce Clause scrutiny, we conclude that it

does not violate the dormant Commerce Clause. First, we reject Alangcas's argument that HRS § 707-756 regulates conduct wholly outside of Hawai'i. "Statutory language must be read in the context of the entire statute." State v. Kaneakua, 61 Haw. 136, 140, 597 P.2d 590, 592 (1979). Hawai'i prosecutes only those criminal acts in which "[e]ither the conduct or the result which is an element of the offense occurs within this State." HRS § 701-106 (1993). Indeed, one of the elements of HRS § 707-756 is intentionally or knowingly traveling to the agreed upon meeting place at the agreed upon time. HRS § 707-756(1)(c). We can find no basis to assume that Hawai'i prosecutors would "attempt to stifle interstate commerce by filing charges for acts committed in other jurisdictions." Hatch v. Superior Court, 94 Cal. Rptr. 2d 453, 473 (Cal. Ct. App. 2000) (rejecting defendant's argument that California's child luring statute, like Pataki, regulates conduct wholly outside of California); see also Hsu, 99 Cal. Rptr. 2d at 191-92 ("When [California child luring statute] is harmonized with the entire California penal scheme, it does not effectively regulate activities beyond California. California prosecutes only those criminal acts that occur wholly or partially within the state. . . . [California child luring statute] makes no reference to place of performance, so courts must assume the Legislature did not intend to regulate conduct taking place outside the state.").

Second, applying Pike, we disagree that HRS § 707-756 places burdens on interstate commerce that outweigh the local benefits derived from the statute. Statutes affecting public

33

safety carry a presumption of validity. Bibb v. Navajo Freight Lines, Inc., 359 U.S. 520, 524 (1959). Furthermore, the definition and enforcement of criminal laws lie primarily with the states. United States v. Lopez, 514 U.S. 549, 561 n.3 (1995). States have a compelling interest in protecting the physical and psychological well-being of minors and certainly in protecting minors from being enticed into sexual activity and other felonious conduct. See Sable Commc'ns of Cal., Inc. v. FCC, 492 U.S. 115, 126 (1989); Backlund, 672 N.W.2d at 437 (noting that the states have a compelling interest in protecting minors "from being seduced to engage in sexual activities"). Any burden placed on interstate commerce by HRS § 707-756 is incidental at best and is far outweighed by the State's interest in protecting minors from harm.

Lastly, we reject Alangcas's argument that HRS § 707-756 inherently falls within the purview of a uniform, national regulation simply by virtue of its involvement with the internet. We also reject the notion that HRS § 707-756 is not a "luring" statute and that it outlaws conduct/communications that are not "harmful to minors." In Pataki, the federal district court concluded that New York's dissemination of indecent materials to minors statute violated the Commerce Clause because "[t]he Internet, like the rail and highway traffic . . . requires a cohesive national scheme of regulation so that users are reasonably able to determine their obligations" and because "[r]egulation on a local [l]evel, by contrast, will leave users lost in a welter of inconsistent laws, imposed by different

states with different priorities." Pataki, 969 F. Supp. at 182. Unlike HRS § 707-756, however, the New York dissemination statute in Pataki broadly banned the communication of harmful material to minors via the internet. Id. at 163. As the court in Hsu noted, electronic enticement statutes that include an "intent" element are much narrower, and "[t]he proscription against Internet use for these specifically defined and limited purposes does not burden interstate commerce by subjecting Internet users to inconsistent regulations." Hsu, 99 Cal. Rptr. 2d at 191; accord Cashatt, 873 So.2d at 436 (stating that the Florida electronic enticement statute "does not burden Internet users with inconsistent state regulations because of the 'intent to seduce' element, which makes it much narrower than the statute invalidated in [Pataki]"). Similarly, HRS § 707-756 requires that a defendant agree to meet with a purported minor with the "intent to promote or facilitate the commission of a felony." HRS § 707-756(1)(b).

Alangcas attempts to distinguish Foley, Hsu, and Backlund by arguing that HRS § 707-756 is not a "luring" statute because it does not contain the terms "entice," "lure," "invite," or "persuade" and does not require that a defendant engage in any conduct that is "harmful to minors." Alangcas's interpretation ignores the purpose of the statute. See Kaneakua, 61 Haw. at 140, 597 P.2d at 592 ("Statutory language must be read in the context of the entire statute and construed in a manner consistent with the purpose of the statute."). In addition to the plain language of the statute, the legislative history makes

35

clear that the legislature was concerned with the use of computers and other electronic devices to "entice" and/or "lure" minors. See S. Stand. Comm. Rep. No. 2867, in 2002 Senate Journal, at 1384 (stating that the purpose of the statute was to "criminalize the sex offender's predatory computer behavior, so that the offender can be prosecuted for what the offender has actually done, as opposed to what the offender may have been trying to do"). In any event, we fail to see how agreeing to meet a minor with the intent to promote or facilitate a felony is not harmful to minors. See HRS § 707-756(1)(b).

Finally, HRS § 707-756 is readily distinguishable from the statute in Pataki because, unlike the statute in Pataki, HRS § 707-756 is not directed at the mere transmission of certain types of communications over the internet. See HRS § 707-756. Pataki, by its own language, limited its constitutional analysis to the New York dissemination statute and did not involve a challenge to a child luring statute. Pataki, 969 F. Supp. at 179 (recognizing that "plaintiffs do not challenge the sections of the statute that criminalize the sale of obscene materials to children, over the Internet or otherwise, and prohibit adults from luring children into sexual contact by communicating with them via the Internet"). Thus, there is no need, as Alangcas urges, to rely exclusively on the reasoning used in Pataki. We find the reasoning articulated in Foley, Hsu, Backlund, and Cashatt to be more persuasive and akin to the conduct prohibited by HRS § 707-756. Accordingly, we conclude that HRS § 707-756 does not violate the dormant Commerce Clause of the U.S.

Constitution, and the Circuit Court properly denied Alangcas's motion to dismiss the indictment on that ground.

V.    CONCLUSION

For these reasons, we affirm the Circuit Court's September 17, 2009 orders denying Alangcas's motions to dismiss Counts I and III of the indictment.

DATED: Honolulu, Hawai'i, November 29, 2013.

On the briefs:

Paul J. Cunney
Victor J. Bakke
Marcus B. Sierra
Dean C.M. Hoe
for Defendant-Appellant

Rebecca A. Copeland
Deputy Solicitor General
Dorothy Sellers
Solicitor General
for Petitioner-Appellee